IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PAUL PENKALSKI,

                        Plaintiff,                      OPINION AND ORDER

    v.

                                                         12-cv-168-wmc

TANNER GERSTNER,

                        Defendant.

---

      Having found liability on plaintiff's claim of unlawful arrest in violation of his Fourth Amendment rights, this case is set for a trial solely on damages for this violation. Before the court are four motions in limine, all by defendant. (Dkt. #45.) While plaintiff did not directly oppose the motions, other filings by plaintiff touch on the core issue presented in the motions: the scope of the allowable claim for damages. (Dkt. ##51, 53, and 60.) For the reasons that follow, the court will grant in part, deny in part, and reserve in part on defendant's motion.

**I. Motion in Limine #1:  Precluding Damages Based More Generally on Penkalski's Arrest**

      Defendant seeks a motion excluding all evidence and argument not directly related to defendant's act of stepping over the threshold into Penkalski's apartment to make an arrest. Specifically, defendant takes issue with plaintiff claiming damages associated with the following activities or instances: (1) handcuffing and transporting Penkalski to jail; (2) the alleged observation of arrest by his neighbors; (3) an interruption of his planned trip to Canada caused by the arrest; and (4) alleged damage to his career and reputation.

Defendant's primary argument is that all of these damages arise from the fact of his arrest -- for which this court has already found as a matter of law Gerstner had probable cause -- and is, therefore, independent from the unlawful location of his arrest for which the court has found liability. In response, plaintiff principally argues that the jury should be allowed to decide whether the arrest would have happened but for Gerstner's unlawful entry. If they were to find that it would *not* have happened, plaintiff argues, then the award of damages may encompass proximate injuries flowing from the arrest itself (rather than just the unlawful entry to effectuate the arrest).

Plaintiff further posits at least three scenarios in which the arrest would not have happened. First, if Gerstner had left the scene to obtain a warrant, the judge may not have signed off on an arrest warrant given uncertainty as to whether Penkalski was actually in an area prohibited by the TRO. Second, if Gerstner had not entered his house, Penkalski may have had time to retrieve the relevant map associated with the TRO and could have convinced Gerstner (or one of his supervisors) that he was not in an area prohibited by the TRO. Third, after failing to arrest Penkalski, Gerstner may have left the scene and UW may have decided not to pursue an arrest for any number of reasons.

On the other hand -- as plaintiff fails to acknowledge -- Gerstner and the other officer may have opted to wait outside of Penkalski's apartment until a warrant was quickly obtained by Gerstner's supervisor, who after all participated in the investigation and authorized Penkalski's arrest. Certainly, there was a probable cause story to tell with no obvious holes. Indeed, even the map Penkalski relies upon (dkt. #25-4) shows that at

least half of the parking lot in which he admits riding his bike was within the restricted area of the Memorial Union for purposes of the TRO against him, making his claim that a judge or the police officer would *not* have found probable cause to arrest dubious. Similarly, it is no less probable that the police *would* have acted to get a warrant or waited for him to leave than any of the other scenarios.  Or, since all of this is essentially speculation, Penkalski would have eventually found his map, allowed Gerstner in, and been arrested anyway.

Most troubling of plaintiff's possible scenarios is the notion that a lay jury would be allowed to speculate as to whether a state court judge would have issued a warrant, but all of the scenarios would essentially require the jury to guess as to the outcome. Barring a persuasive evidentiary proffer by plaintiff at Monday's final pretrial conference, therefore, the court will limit plaintiff's claim to compensatory damages to any injury (whether physical or mental) caused by defendant entering into Penkalski's apartment to effectuate the arrest.

## II. Motion in Limine #2: Excluding Testimony of the Cause of Penkalski's Emotional or Psychological Damages

Defendant next seeks an order excluding Penkalski's testimony as to the *cause* of his alleged emotional or psychological damages.  Defendant argues that plaintiff would need to have expert testimony to establish that Gerstner's entering Penkalski's apartment to make an arrest caused his emotional and psychological damages.  Instead, defendant would limit Penkalski to his own perceptions of his mental health issues.  The court agrees with defendant that plaintiff cannot testify that the unlawful entry caused a

particular medical condition. Plaintiff can, of course, describe the impact that the unlawful entry had on his mental and physical well-being. *See Henrickson v. Cooper*, 589 F.3d 887, 893 (7th Cir. 2009) (allowing plaintiff to describe pain resulting from attack where there is "no complicated question of medical causation"); *Holleman v. Duckworth*, 700 F.2d 391, 395 (7th Cir. 1993) (permitting plaintiff to testify as to his own medical symptoms).

### III. Motion in Limine #3: Excluding Evidence that Plaintiff Suffered Physical Injury

Defendant also seeks an order excluding from evidence any claim of damage of a physical nature suffered by plaintiff as a result of defendant's unlawful entry in the absence of plaintiff receiving any medical care or treatment for his alleged injuries. Specifically, defendant argues that "[p]laintiff cannot now claim medical conditions that have never been diagnosed or treated by a medical professional." (Def.'s MIL (dkt. #45) 5.) While the court agrees that plaintiff cannot testify to any medical treatment that he did not seek, plaintiff could testify to physical injury caused by defendant's actions, if such an injury occurred. Without the benefit of plaintiff's response, it is not possible to assess whether plaintiff suffered any physical harm or injury caused by defendant's entry into his apartment. Plaintiff should be prepared to make an evidentiary proffer on this category of damages as well.

**IV. Motion in Limine #4: Excluding Evidence that Charges Were Dropped**

Finally, defendant seeks an order excluding any reference to the fact that the charges were dropped following plaintiff's May 19, 2010, arrest. Defendant contends that such evidence is either irrelevant in light of the fact that the court has already determined that Officer Gerstner had probable cause to arrest plaintiff, or even if relevant, its prejudicial effect would outweigh any probative value under Rule 403. Because the court intends in the introductory instructions to inform the jury that Officer Gerstner had probable cause to arrest Penkalski -- to do otherwise could confuse the issue for the jury to decide -- the court also intends to inform the jury that those charges were eventually dropped. Both elements are essential to provide the jury context in considering an award of punitive damages, if any.

ORDER

IT IS ORDERED that defendant Tanner Gerstner's motions for limine (dkt. #45) is GRANTED IN PART, DENIED IN PART AND RESERVED IN PART for the reasons explained above.

Entered this 14th day of August, 2015.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge